1  HARVEY A. HYMAN (State Bar No: 121554)
   Law Offices of Harvey A. Hyman
2  180 Grand Avenue, Suite 935
   Oakland, CA 94612
3  Telephone: (510) 272-0655
   Fax: (510) 272-0657
4  Email: hyman@headinjurylaw.com

5  Attorney for Plaintiff
   STEPHEN E. ARMSTRONG

IN THE UNITED STATES DISTRICT COURT

for the

NORTHERN DISTRICT OF CALIFORNIA

C 07 3793   SBA

| STEPHEN E. ARMSTRONG, | CASE NO: |
|---|---|
| Plaintiff, | **COMPLAINT** |
| v. | |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

Plaintiff STEPHEN E. ARMSTRONG complains of defendant UNITED STATES OF AMERICA, and for cause of action alleges:

1. This action arises under the Federal Tort Claims Act, 28 U.S.C. Section 1346(b) which vests exclusive jurisdiction over this action in this court.

2. Plaintiff STEPHEN E. ARMSTRONG (hereinafter called "plaintiff") resides at 1732 Washington Street #3 San Francisco, CA 94109, within the jurisdiction of this court.

3. On 11/5/06 defendant UNITED STATES OF AMERICA (hereinafter called "defendant") owned, possessed, controlled, inspected, maintained and repaired

Complaint                            1

1  a certain paved parking lot on the grounds of the Presidio in San Francisco,
2  California, through a federal agency and/or federal corporation known as the Presidio
3  Trust, which, on information and belief, was part of the U.S. Department of Interior,
4  National Park Service, Golden Gate National Recreational Area. This parking lot was
5  designated by defendant as the Eastern Parking Lot of Building 1801 Wedemeyer.
6      4. For purposes of this Complaint the term "defendant" refers both to the
7  United States of America and to its employees while acting within the course and
8  scope of their employment for the United States of America.
9      5. On 11/5/06 defendant kept the parking lot open for travel by cars, bicyclists
10 and pedestrians without any posted restrictions and without any warnings that a large
11 sink hole existed in the middle of the asphalt concrete surface of the parking lot. The
12 parking lot was sloped from north to south at approximately a 5-7% grade. The sink
13 hole could not be seen from the entrance to the lot uphill. The sink hole was
14 approximately 8-9 inches deep and two feet around. It lay in an old concrete patch
15 approximately 6 x 9 feet in size. On information and belief the sink hole developed
16 after defendant excavated the parking lot, but negligently failed to compact the fill
17 after the excavation, causing the middle of the patch to sink down. On information
18 and belief, the sinkhole had existed for approximately 4 years prior to the incident, but
19 in all that time defendant had never made the area safe for bicyclists by repairing it,
20 marking it with brightly colored paint, barricading it, putting warning cones around
21 it or posting signs to warn of its presence.
22     6. At the time of the incident the parking lot was in dangerous condition
23 because of the presence of the sink hole which functioned as a trap that was likely to
24 cause serious injury to a bicyclist riding south downslope, because he could not see
25 it until his front wheel sank down into it and by then it would be too late to avoid a
26 violent jolt that could launch him off his bicycle and cause serious injuries. Had
27 defendant guarded against or warned of the peril of the sinkhole by surrounding it
28 Complaint                                                2

with brightly colored paint, warning cones or barriers, plaintiff could and would have seen it and avoided it and wholly avoided crashing in the sinkhole and becoming injured. Defendant maliciously or willfully failed to take remedial action by guarding against or warning of the dangerous condition created by the sinkhole prior to the incident, and this was the proximate cause of the incident and plaintiff's bodily injuries.

7. On 11/5/06 at approximately 3:30 p.m. plaintiff was riding his bicycle in the Presidio in a safe and careful manner while headed south towards an exit known as the 15th Avenue Gate on Lake Street. In order to get to the exit, plaintiff used the parking lot. He had never ridden through this lot before, so he did not know about or have any reason to anticipate the presence of the dangerous sink hole. While riding south through the lot he observed two large unattended dumpsters that had been placed on each side of the lot at an angle facing each other in a V shape, but leaving the central portion of the lot open for travel by bicycle. The placement of these dumpsters was such as to funnel a bike rider down the center of the lot directly into the sink hole. On information and belief, defendant had placed, or caused these dumpsters to be placed, in this location to hold debris coming from demolition work to the interior of the public building adjacent to the parking lot. Defendant's placement of the dumpsters in these locations compounded the danger of the sinkhole, and increased the probability that a bicyclist would ride into it, lose control and crash.

8. As plaintiff rode his bicycle through the middle of lot in such a way as to avoid the dumpsters, he was unexpectedly jolted off his bicycle onto the hard parking lot surface and suffered serious, permanent bodily injuries, because his front wheel suddenly dropped down into the sinkhole. Prior to crashing down into the sinkhole, plaintiff did not see it because it was the same color as the surrounding asphalt, it was not marked by bright paint or in any other manner and the lot was on a downslope.

Complaint                                3

9. Under 28 U.S.C. Section 1346(b) defendant is liable to plaintiff under California law to the same extent and in the same manner as if defendant were a private person owning land. California Civil Code Section 846(a) authorizes a tort lawsuit for bodily injuries against a private owner of land open for the recreational use of the public, where the landowner has wilfully or maliciously failed to guard or warn against a dangerous condition. Plaintiff meets the exception to private landowner immunity from suit for recreational use of land set forth in C.C. Section 846(a), because defendant had actual or constructive notice of the dangerous sinkhole long prior to the incident; it had actual or constructive notice that injury to a bicyclist on the premises was probable not merely possible as a result of the dangerous sinkhole; and defendant acted with conscious disregard for the probability that a bicyclist would be injured by the perilous sinkhole when it failed to make any repairs to the sinkhole, to guard bicyclists from it or post any safety warnings for bicyclists over a lengthy period of time, believed to be four years.

10. Pursuant to 28 U.S.C. Sections 2401 and 2675(a) plaintiff filed a proper administrative tort claim in a timely manner with the proper agency, the Presidio Trust, on January 2, 2007. Since defendant did not reject the claim in writing, plaintiff was allowed to file, and did file, a first amended claim with the Presidio Trust on March 29, 2007 and a second amended claim on May 24, 2007. The second amended claim sought damages of $200,200. On July 5, 2007 the Presidio Trust mailed plaintiff a written notice of rejection of his administrative tort claim (inclusive of the original, first and second amended claims) and gave him 6 months from said date to file this lawsuit. Hence, this lawsuit is timely filed.

11. As a result of the bicycle crash caused by defendant's willful or malicious failure to guard against or warn of a dangerous condition, plaintiff has sustained economic losses of $200 for bicycle repairs; $4,600 wage loss; Emergency Room bill of $1,980, x-ray bills of $383, ER physician bill of $335, orthopedic bills

Complaint                                        4

of $879, $290 in medical supplies, $322 for medical transportation and future surgery to repair the non-union in his fractured clavicle estimated by the orthopedic surgeon at $25,000 to $30,000 plus post-operative physical therapy and future time off work for surgery and reduced earning capacity. The rest of the $200,200.00 in damages sought by plaintiff, as set forth in his tort claim, are for general damages for pain and suffering.

WHEREFORE, plaintiff prays for judgment against defendant as follows:

1. For a money judgment for all past, present and future hospital, medical, therapy and prescription expenses for the diagnosis, care, treatment and management of the injuries to plaintiff; for the physical injuries he suffered and the associated pain, suffering, anguish and loss of enjoyment of life; fear, shock, alarm, grief, distress, upset and worry; disability in domestic, social, recreational, fitness and exercise activities; in an amount according to proof to justly and fairly compensate plaintiff for damages proximately caused by defendants' negligence in the matters complained of totaling $200,200.00;

2. For costs of suit;

Dated: July 24, 2007

_____
HARVEY A. HYMAN
Attorney for Plaintiff

Complaint                                    5

CERTIFICATION

I am an attorney at law duly licensed to practice before all courts in the State of California and the Northern District of California. I am the attorney of record for plaintiff herein. I certify that to the best of my knowledge, information and belief, formed after reasonable inquiry, the foregoing Complaint entitled <u>Stephen E. Armstrong vs. United States of America</u> filed herewith is well grounded in fact and law.

I declare under penalty of perjury that the foregoing is true and correct, and that I executed this declaration on the 24th day of July, 2007 in Oakland, CA.

_____
HARVEY A. HYMAN
Attorney for Plaintiff

Complaint                                    6