UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | | |
|---|---|---|
| STEPHEN E. ARMSTRONG, | ) | No. C 07-3793 SBA |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER |
| v. | ) | [Docket Nos. 28, 38] |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

On November 18, 2008, this court heard oral argument on Defendant's motion for summary judgment and Plaintiff's motion for partial summary judgment. Brian J. Malloy appeared for the plaintiff and Neill T. Tseng appeared for the defendant. Having considered both motions, the supporting, opposing and reply memoranda, the evidence before the court, and the arguments of the parties, the court hereby GRANTS Defendant's motion for summary judgment and ORDERS the clerk of court to enter judgment in favor of Defendant and against Plaintiff on all claims alleged in the complaint. Because the court grants Defendant's motion for summary judgment, Plaintiff's motion for partial summary judgment is DENIED as moot.

## BACKGROUND

The Presidio of San Francisco is a National Historic Landmark District and is part of the Golden Gate National Recreation Area. Plaintiff Stephen Armstrong ("Plaintiff") was allegedly injured at the Presidio on Sunday, November 5, 2006, at around 3-3:30 p.m. when he fell off his bicycle. Plaintiff claims that he fell after hitting a hole in a parking lot. The parking lot is part of what is known as "Area B" of the Presidio, which is run by the Presidio Trust, a wholly owned government corporation of defendant United States ("Defendant").

Plaintiff described November 5, 2006 as a warm, bright and sunny day with clear visibility. He began his bicycle ride that day at around 2:00-2:30 p.m. from his home on Washington Street, following marked bicycle routes 65 and 69, which led him into the Presidio

and down Wedemeyer Road.  Plaintiff had ridden in the Presidio two or three times before, but had never ridden or walked through any of its parking lots, including the lot where the accident occurred.  Plaintiff knew nothing about the lot before the accident.

The lot is located across Wedemeyer St. from the old Public Health Service Hospital, which is no longer in use.  The lot is paved and open to vehicles, bicyclists, and pedestrians.  However, it is rarely used.  The lot is not regularly used by employees or tenants of the Presidio Trust because there are other lots that are closer to park in.  It is not regularly used by bicyclists because it is not a convenient route; bicyclists typically stay on Wedemeyer Street.  The center section of the lot, where Plaintiff fell, slopes downward from north to south at around a 5.6% grade.  That section of the lot contains a depression/dip and then, approximately 43 feet to the south of the depression/dip, an asphalt concrete patch containing a hole.

On the date of the accident, Plaintiff entered the lot to investigate a trail head at the top of the lot and look for a trail to ride on.  When he discovered the trail was closed to bicyclists, he continued his route not along Wedemeyer Road, but by riding through the lot.  Plaintiff testified that there were no cars in the lot, and, aside from a couple of storage containers or dumpsters, visibility was clear.  Plaintiff started from a stopped position at the top of the lot and rode straight down through the center of the lot, north to south, following a faded center line.  Plaintiff rode downhill without applying any brakes and estimated he could have been traveling as fast as 15 miles per hour.

Although Plaintiff admitted that he could see a couple hundred feet ahead coming through the lot, he claimed not to have seen the hole.  When asked why he did not see the hole, Plaintiff testified that it was because there was a rise of "definitely" "at least a couple of feet" in front of the hole, between the depression and the hole.  He testified that the rise obstructed his view of the hole as he rode through the depression.  Plaintiff testified that he didn't see the hole, hit it and fell off his bicycle.  Plaintiff testified that he would have been able to avoid the hole if he had seen it.  Not long after Plaintiff fell off his bicycle, Presidio Trust employee Russell Tom ("Tom"), a landscape supervisor, happened upon the scene.  Tom did not witness the accident, but rendered assistance to Plaintiff.

Defendant filed a motion for summary judgment on all claims alleged in the complaint

and on any damages from future surgery.  Plaintiff filed a motion for partial summary judgment on Defendant's First Affirmative Defense (lack of subject matter jurisdiction), Second Affirmative Defense (that Plaintiff's complaint fails to state a claim upon which relief can be granted), Fifth Affirmative Defense (intervening or superseding act by someone other than a federal employee), and Sixth Affirmative Defense (that Defendant is immune from liability under California's Recreational Use Statute).

## LEGAL STANDARD

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. Celotex v. Catrett, 477 U.S. 317, 323-24 (1986). Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-249 (1986). An issue is "material" if the fact may affect the outcome of the case. Id. at 249. "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997). The party moving for summary judgment has no burden to produce any evidence on elements of a claim on which the non-moving party will bear the burden of trial, but can merely point out an absence of evidence to support any such element.  Celotex, 477 U.S. at 322-23; Maffei v. Northern Ins. Co. of New York, 12 F.3d 892, 899 (9th Cir. 1993). Once the moving party points out the absence of evidence, then the nonmoving party must come forward with specific evidence to show there is a genuine issue for trial.  Celotex, 477 U.S. at 322-23; Maffei, 12 F.3d at 899. The moving party is entitled to judgment as a matter of law if the non-moving party fails to make this showing.  Celotex, 477 U.S. at 323.

Summary judgment is not only proper if plaintiff fails to produce *any* evidence on an element of her case, but summary judgment is also proper if plaintiff fails to produce *sufficient* evidence on an element of her case. The Supreme Court has specifically held that summary

judgment is proper against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.  The mere existence of a "scintilla" of evidence in support of the non-moving party's position is not sufficient. The non-moving party has the burden of establishing sufficient evidence on each element of his case so that the finder of fact could return a verdict for her.  Anderson, 477 U.S. at 249.

## ANALYSIS

Under the Federal Tort Claims Act, Defendant is liable to Plaintiff only if a private person would be liable to Plaintiff under California law.  See 28 U.S.C. § 1346(b)(1). "California law imposes a duty on people, including landowners, to use reasonable care under the circumstances to prevent injury to others."  Cleveland v. United States, 546 F. Supp. 2d 732, 770 (N.D. Cal. 2008) (citing Alcaraz v. Vece, 14 Cal.4th 1149, 1156  (1997)).  However, the California Recreational Use Statute, Cal. Civ. Code § 846, "alters this general rule by immunizing landowners from liability for injuries suffered by people who use their land for recreational purposes."  Cleveland, 546 F. Supp. 2d at 770 (citing Avila v. Citrus Community College Dist., 38 Cal.4th 148, 156 (2006).   The law "is designed to encourage landowners to allow members of the public to come onto their land for recreational purposes and to assure those owners that they will not be sued for their generosity."  Ravell v. United States, 22 F.3d 960, 961-62 (9th Cir. 1994) (citing Johnson v. Unocal Corp., 21 Cal. App. 4th 310, 315 (1993)). This court concludes that Defendant is immunized from liability under the Recreational Use Statute.

### A.    PLAINTIFF WAS RIDING IN THE PARKING LOT FOR A RECREATIONAL PURPOSE AT THE TIME OF THE ACCIDENT.

For the Recreational Use Statute to apply, Plaintiff must have been riding for a recreational purpose at the time of the accident.  "A recreational purpose is one intended to refresh the body or mind by diversion, amusement or play."  Valladares v. Stone, 218 Cal. App. 3d 362, 369 (1990)) (citing Webster's Third New Internat. Dict. (1986) p. 1899.), overruled on other grounds, Ornelas v. Randolph, 4 Cal. 4th 1095 (1993).  Plaintiff asserts that he was "commuting" and not "recreating" because he was riding to Ocean Beach at the time of the

accident.  The court is not persuaded.  The determination of recreational use "must be made through a consideration of the totality of facts and circumstances, including **(1)** the path taken, **(2)** the length and **(3)** purpose of the journey, **(4)** the topography of the property in question, and **(5)** the prior use of the land." Gerkin v. Santa Clara Valley Water Dist., 95 Cal. App. 3d 1022, 1027 (1979) (enumeration added), overruled on other grounds, Delta Farms Reclamation Dist. v. Superior Court of San Joaquin County, 33 Cal. 3d 699 (1983)).  Each of those factors demonstrates that Plaintiff was riding for a recreational purpose at the time of the accident.

Factors (1), (2) and (5) will be considered together and demonstrate that Plaintiff was riding for a recreational purpose.  Both in general and on the day of the accident, he chose routes that went through recreational areas such as the waterfront along the Marina, under the Golden Gate Bridge, by the beach, through Golden Gate Park, and through the Presidio, which is part of the Golden Gate National Recreation Area.  He followed marked bicycle routes and, while he had some routes he rode repeatedly, he also liked exploring different paths.  Indeed, the very reason he ventured into the subject parking lot was because he wanted to explore a possible trail. At the time of the accident, he had ridden several miles at a leisurely pace on a Sunday afternoon, had not set out with any path or itinerary in mind, had not tried to take the shortest route between destinations, and had ridden into a parking lot to explore a possible trail.  None of this evidence is consistent with riding a bicycle merely for the purpose of "commuting."  Cf. Domingue v. Presley of S. Cal., 197 Cal. App. 3d 1060, 1065 (1988) (the minor plaintiff was using the land at the time of the accident "not for recreational purposes, but as a shortcut to get to his friend Curtis's house"), overruled on other grounds, Ornelas, 4 Cal. 4th 1095; Gerkin, 95 Cal. App. 3d at 1028 (the minor appellant and her sister, who were walking to the supermarket to use the telephone and purchase a candy bar, walked across a bridge that was "the shortest route between their apartment and the supermarket" and "was a method regularly used by residents in the area").

Factor (3), the purpose of the journey, also demonstrates that Plaintiff was bicycling for a recreational purpose.  Plaintiff bicycled purely of his own volition and not as part of his job. Plaintiff testified that he rode his bicycle for the enjoyment of being in the outdoors and to keep in shape.  He also testified that the reason he entered the subject parking lot was because he saw

a trail head and wanted to find a trail to ride on. Those purposes – pleasure and exercise – are recreational as a matter of law. See id. at 1027 (noting that recreational "hiking" means "to take a long walk for pleasure or exercise"); accord Domingue, 197 Cal. App. 3d at 1065. Recreational bicycle riding has specifically been held to be within the scope of § 846. See id. at 1071 n.2 ("The recreational uses specified by section 846 encompass 'riding, including animal riding' and 'vehicular riding.' Recreational bicycle riding comes within the statutory category of 'riding' . . . ."). Additionally, the California Supreme Court has instructed that the list of activities set forth in § 846 is not exhaustive, and should be read to enlarge rather than limit the activities that qualify. See Ornelas, 4 Cal. 4th at 1100-01.

Plaintiff's claim that he was commuting is a novel but unsupported attempt to restrict the reach of § 846, which is contrary to the Ninth Circuit's admonition that the statute must be read generously. See Ravell, 22 F.3d at 963 (recognizing "the generous reading of the recreational use statute that the California Supreme Court has insisted upon"). The fact that Plaintiff happened to have a destination in mind is wholly unremarkable given that most bicycle riders do not pedal around aimlessly, and does not transform his bicycling into a "commute." To accept Plaintiff's argument would "undermine the statute with elusive, unpredictable, and even perverse interpretations that can 'thwart the laudable goal of inducing owners to make their properties available for recreation." Ravell, 22 F.3d at 963 (quoting Ornelas, 4 Cal. 4th at 1107)).

Turning to factor (4), the topography of the property also is consistent with a recreational purpose. The Presidio is part of the Golden Gate National Recreation Area and bicycling in the Presidio is encouraged. The parking lot was just off of Wedemeyer Street, which is part of a marked bicycle route. The lot was paved and bicyclists were allowed to ride through it. There was also a trail head at the top of the parking lot for hikers. Plaintiff's argument that the parking lot is not located in some remote wilderness does not make sense. Not only does Plaintiff fail to explain why recreation can take place only "in some remote wilderness," but the California Supreme Court has expressly rejected this contention. See Ornelas, 4 Cal. 4th at 1105 ("The Legislature made no distinction between developed and undeveloped property or between urban and rural land, and imposed no requirement that the site be in a 'natural' or unaltered state."); Delta Farms, 33 Cal. 3d at 706-07 ("section 846 is by no means limited to land in its natural

condition - it specifically mentions 'structures' - it obviously encompasses improved streets").

Because Plaintiff was riding for a recreational purpose, Defendant is not liable unless one of the three exceptions to the Recreational Use Statute applies. Landowners may still be liable for tort claims if (1) they demonstrate "willful or malicious failure to guard or warn against a dangerous condition, use, structure or activity"; (2) they received consideration in exchange for permission to enter for the recreational purpose; or (3) they expressly invited, rather than merely permitted, the injured party onto the premises. See Cal. Civ. Code § 846; see also Colin v. United States, 2001 WL 776998, *3 (N.D. Cal. 2001). Plaintiff concedes that factors (2) and (3) do not apply. As set forth below, neither does factor (1).

### B.    DEFENDANT DID NOT WILLFULLY OR MALICIOUSLY FAIL TO GUARD OR WARN AGAINST THE HOLE.

The standard for willfulness and maliciousness is that of an intentional tort. See Spires v. United States, 805 F.2d 832, 834 (9th Cir. 1986). Accordingly, it is a very high standard:

> The meaning assigned to willful misconduct by the California courts is any intentional act of an unreasonable character undertaken in disregard of a known risk or a risk so obvious that the actor must be taken to have been aware of it, and so great as to make resulting harm highly probable.

Id. (internal quotation marks and citation omitted). "Willful or malicious conduct is not presumed. The plaintiff has the burden to 'specify the particular acts upon which the willful misconduct of the person that is charged.'" Colin, 2001 WL 776998, *3 (quoting Charpentier v. Von Geldern, 191 Cal. App. 3d 101, 108 (1987)). Under California law, Plaintiff must establish all of the following three elements: "(1) actual or constructive knowledge of the peril to be apprehended; (2) actual or constructive knowledge that injury is a probable, as opposed to possible, result of the danger; and (3) conscious failure to avoid the peril." Colin, 2001 WL 776998, *4 (quoting Spires, 805 F.2d at 834). Although there is a triable issue of fact as to element (1), Plaintiff cannot establish elements (2) or (3).

### 1.    There is a Genuine Issue of Material Fact Whether Defendant Had Constructive Knowledge of the Hole.

Defendant's evidence established that it had no actual knowledge of the hole until after the accident occurred. Plaintiff presented no evidence to the contrary. Plaintiff attempted to create a triable issue of fact based on a purported conversation he had with Tom right after the

accident.  After Plaintiff fell, he asked Tom as he was lying down, "How did I wipe out?" and, "Did I just hit something stupid or is there something big over there?"  Tom purportedly replied, "Yeah, that thing."  Plaintiff then asked Tom, "Is it like a hole" and "How long has it been there," whereupon Tom purportedly replied "three or four years."  Based on this, Plaintiff asserts that Defendant knew the hole had existed for three to four years.  However, that is not so.

Plaintiff never specifically identified the hole for Tom, couldn't see the hole, and pointed only in its general direction.  Given this ambiguity, the undisputed facts show that Tom thought Plaintiff was referring to the depression/dip north of the hole when he spoke of the object "like a hole".  The depression/dip was in the same general direction Plaintiff was pointing, and a depression/dip can be reasonably considered to be "like a hole."  Thus, Plaintiff fails to create a genuine issue of fact as to whether Defendant had actual knowledge of the hole's existence.  Plaintiff simply speculates or assumes that Tom was referring to the hole, but that cannot overcome summary judgment.  See, e.g., Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000) ("A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact"); Nelson v. Pima Cmty. Coll., 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("mere allegation and speculation do not create a factual dispute for purposes of summary judgment").

The court finds, however, that there is a genuine issue of material fact whether Defendant had constructive knowledge of the hole.  "Constructive knowledge is measured by an objective standard: 'whether a reasonable man under the same or similar circumstances as those faced by the actor would be aware of the dangerous character of his conduct.'" Colin, 2001 WL 776998 at *4 (citations omitted).  Plaintiff argues that, although he does not know how long the hole existed before the accident, the finder of fact may draw an inference that it existed long enough to be reasonably discovered because Defendant did not have a policy of inspecting the lot for holes.  See Ortega v. Kmart Corp., 26 Cal. 4th 1200 (2001).

Defendant asserts that it had a work order system by which employees, tenants, and others at the Presidio reported holes and other hazards to the Presidio Trust's work order desk, which then referred the work order to the appropriate department for follow-up.  Seven work orders were submitted for the subject parking lot in the five years before the accident, and none

-8-

for the subject hole.  Additionally, several Presidio Trust employees entered the parking lot in the one or two months preceding the accident but testified that they did not see the hole. Defendant relies on this as evidence that it did not have constructive knowledge of the hole. However, the court holds that this evidence is insufficient to prevail on summary judgment, and that the reasonableness of Defendant's lack of knowledge of the hole is a triable issue.

### 2. The Undisputed Facts Show That Defendant Did Not Have Actual or Constructive Knowledge that Injury was a Probable Result of the Hole.

Plaintiff cannot satisfy the second element because it is undisputed that Defendant did not have actual or constructive knowledge that injury resulting from the hole "was not merely possible, but *probable*." Finneman v. U.S. Dep't of Transportation, 1994 WL 172253, *2 (N.D. Cal. 1994) (emphasis in original).  It is undisputed that Defendant had no knowledge of any prior accidents in the subject parking lot.  This "cuts strongly against any triable issue of fact on willfulness.  The courts have relied heavily on the defendant's knowledge of prior accidents or lack thereof in ruling on this element, even though by itself neither is determinative." Colin, 2001 WL 776998, *6; accord Finneman, 1994 WL 172253, *4.

Plaintiff asserts that the use of the lot is key to determining whether Defendant knew or should have known that injury was probable, but this factor actually works against Plaintiff.  The undisputed evidence shows that the parking lot was attached to a vacant building and was rarely used by anyone, including bicyclists.  Employees had no reason to and did not park in the lot. Nor did tenants of the Presidio Trust, including the Arian Press and Lone Mountain Preschool, because they parked in other lots that were closer.  Children rarely entered the lot. Although the lot was available for special use permits, this rarely occurred, as such permits were issued for the lot no more than five times.

Importantly, not only was overall use of the lot low, but it was rarely used by bicyclists in particular.  In order to establish willfulness or maliciousness, Plaintiff bears the burden of proving actual or constructive notice that injury from the specific activity – bicycling – was probable. See Cleveland, 546 F. Supp. 2d at 773-74.  However, the undisputed evidence showed that bicyclists used the lot so infrequently that Plaintiff could not sustain his burden.  Several Presidio Trust employees testified they had seen fewer than five bicyclists ride through the lot in

approximately a ten-year period.  Bicyclists were not encouraged to use the lot, nor was the lot designed for bicycling.  Based on these undisputed facts, Defendant did not have actual or constructive knowledge that injury was probable as a matter of law.  Cf. Mattice v. United States, 969 F.2d 818, 823 (9th Cir. 1992) (stating that the evidence "does not establish a question of fact as to whether the government knew the curve was dangerous and probably would cause injury" even when there were nine previous accidents on the same road and when there was evidence that the guardrail the plaintiff drove through had been hit before).

### 3. The Undisputed Facts Show That Defendant Did Not Consciously Fail to Avoid the Peril.

The undisputed facts show that, as a matter of law, Defendant could not have consciously failed to avoid the peril without knowledge of any probable accidents.  As this court has observed, in almost all of the cases where courts refused to grant summary judgment to Defendant, "the evidence showed far more egregious inaction by the defendant in the face of a serious peril well known to (and sometimes created by) the defendant, yet hidden from or unavoidable by the plaintiff."  Colin, 2001 WL 776998, *9.  That is not the case here.  First, as the court held above, Defendant had no actual notice of the hole and therefore it was not "well known."  Nor was the hole hidden or unavoidable.  Plaintiff admitted that he could have avoided the hole had he seen it.  Although Plaintiff thought the rise before the hole obstructed his view of the hole, this was established to be erroneous by Plaintiff's own expert, who agreed with Defendant's expert that the hole was within Plaintiff's line of sight, beginning from 136 feet away.  Plaintiff's expert further agreed that the hole was detectable and the accident avoidable had Plaintiff been riding slower.

Plaintiff is also incorrect to the extent he suggests that a failure to warn automatically establishes a conscious failure to act to avoid a peril.  The cases Plaintiff cites do not announce any such blanket rule, and they are all distinguishable because they involved situations where the government knew about the dangers posed by the peril but failed to warn about them.  Here, the evidence shows the opposite – that the government did not even know about the hole, much less that it was hazardous to bicyclists.  Cf. Termini v. United States, 963 F.2d 1264, 1268-69 (9th Cir. 1992) (Forest Service bladed and maintained a spur, which was indistinguishable from other

roads in the area but led to a cliff's edge that was not visible from the beginning of the spur, in such a way that a driver could easily mistake it for the main road and drive down it, and the Forest Service failed to observe its own safety standards in its maintenance of the spur); <u>Soto v. United States</u>, 748 F. Supp. 727, 730-31 (C.D. Cal. 1990) (government had actual knowledge of peril when a drowning accident had occurred just two and a half months earlier, government employees had observed diving at the pools "many times," one employee had suggested a warning sign, the area attracted "literally hundreds of swimmers and divers every summer weekend," and the government did not enforce or guard against the no swimming/diving regulation); <u>MacLeod v. United States</u>, 1994 WL 860798, *9-10 (C.D. Cal. 1994) (government knew the structure where the accident occurred posed a threat to human life for at least five years before the accident at issue, several individuals had previously sustained injuries in the structure, and the park safety manager recognized four years before the accident that the structure presented a probable risk of injury, yet the government failed to erect any signs or other warnings).

<u>**CONCLUSION**</u>

For the foregoing reasons, the court GRANTS Defendant's motion for summary judgment, DENIES Plaintiff's motion for partial summary judgment as moot.

IT IS SO ORDERED.

DATED: 11/20/08

_____
HON. SAUNDRA B. ARMSTRONG
United States District Judge